ANDRZEJ T. WIRTH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2583–71.    Filed March 28, 1974.

Andrzej T. Wirth, pro se.
*Barry D. Gordon*, for the respondent.

OPINION

RAUM, *Judge:* The disposition of this case depends entirely upon whether petitioner's living expenses in 1968 were incurred "while

away from home in the pursuit of a trade or business" as provided in section 162(a)(2), I.R.C. 1954:

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*        \*        \*        \*        \*        \*        \*

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; \* \* \*

Petitioner contends that in 1968 not only did he intend to return eventually to Warsaw but also there was the imminent and real possibility that he would be compelled to do so on short notice, and as a result thereof his "home" continued to be in Warsaw while he was in the United States. The Commissioner responds that, at least for purposes of section 162(a)(2), petitioner's circumstances indicate that by 1968 his "home" was no longer in Warsaw and he can therefore not be considered to have been "away from home." We agree with the Commissioner.

A taxpayer cannot be "away from home" unless he has a "home"; stated otherwise, the "home" of a taxpayer without a permanent and fixed place of abode is located wherever the taxpayer happens to be. *James* v. *United States*, 308 F. 2d 204, 207 (C.A. 9); *Rosenspan* v. *United States*, 438 F. 2d 905, 912 (C.A. 2), certiorari denied 404 U.S. 864; *United States* v. *Mathews*, 332 F. 2d 91, 93 (C.A. 9). Consequently, a taxpayer has a "home" for the purpose of section 162(a)(2) only when he has incurred substantial living expenses at a permanent place of abode. *James* v. *United States, supra* at 208.

The application of this standard to the totality of petitioner's circumstances in 1968 persuades us that Warsaw was not his "home" at that time. Warsaw had quite clearly ceased to be his permanent place of abode. He had left Poland in 1966 fully cognizant of the increasingly anti-intellectual climate which the Government fostered and which had already forced him to leave his chosen field of work. By abandoning his position at the Institute of Literature of the Polish Academy of Sciences, Wirth had severed his sole remaining employment tie to Poland. Thereafter, he began to create a reputation for himself in American academic circles. After teaching two terms at the University of Massachusetts, he accepted a Rockefeller grant to work on a book and subsequently took concurrent teaching positions for the 1968 spring term at Stanford and San Francisco State College.

Although Wirth's family remained in Warsaw, which would normally indicate the existence of a permanent abode, the facts were otherwise here. Wirth had tried to persuade his wife to join him in the

United States for the duration of his stay, only to discover that serious political and personal differences threatened his marriage. The fact that he continued to send some money to his estranged wife strikes us as no more indicative of the existence of a permanent abode than another man's maintenance payments to his wife following a separation. Indeed, the deterioration of his marital relationship which ended in divorce and the prompt remarriage of his former wife underscore the conclusion that he no longer had an abode in Warsaw to which he might return.

In addition to his discontinued employment ties and impaired marital links to Poland, the increasingly unfavorable political climate in Poland strongly suggests that Warsaw could no longer be considered his permanent abode. Petitioner admitted to his growing discomfort with life in Poland prior to his leaving in 1966. By the summer of 1967 he was sufficiently concerned about the Polish Government's attitude towards him to make it necessary to meet his wife in Yugoslavia rather than in Poland. When the Polish authorities withheld his passport at the end of 1967, Wirth balked at their demand that he return to Poland, a strong indication that he had by that time rejected at least the permanency of his prior life in Poland.

In view of all this, we are persuaded that Warsaw had ceased to be his permanent abode. His contacts with Poland during that time were not such as to give him a "home" there for purposes of section 162 (a) (2). We are not unmindful that ties to one's homeland are not easily broken nor that the United States might have compelled Wirth to return. But the issue before us is whether Poland was petitioner's "home" during 1968, not whether he might eventually have returned to Poland to reestablish a permanent abode of the nature which he had abandoned after arriving in this country. Consequently, petitioner did not maintain a "home" in Warsaw in 1968 from which to be "away from" and is therefore not entitled to a deduction for the living expenses which he incurred in the course of the year. During the year 1968 his situation was similar to that of an itinerant who has no permanent home and whose "home" for tax purposes is where he resides temporarily from time to time. In petitioner's case that was in the area of the universities at which he taught and not in Warsaw. The expenses which he incurred for such items as meals and lodging were nondeductible personal expenses rather than business expenses incurred while traveling "away from home."

To give effect to an uncontested claim for refund unrelated to the issue herein,

*Decision will be entered under Rule 155.*