LUCIEN BOYER and RIKA BOYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Boyer v. Commissioner
Docket Nos. 5901-75, 3579-76.
United States Tax Court
T.C. Memo 1977-331; 1977 Tax Ct. Memo LEXIS 109; 36 T.C.M. (CCH) 1329; T.C.M. (RIA) 770331; September 26, 1977, Filed Eugene Anderson, for the petitioners. Rebecca T. Hill, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined the following deficiencies in petitioners' joint Federal income taxes: Year
Amount
1971
$7,782.35
1972
6,393.32
1973
4,757.40 After concessions by both sides, the only issue remaining for decision is whether petitioners are entitled to a deduction under section 162(a)(2), I.R.C. 1954, for certain *110 expenses for meals and lodging allegedly incurred while "away from home" in the pursuit of a trade or business. FINDINGS OF FACT Petitioners Lucien and Rika Boyer, husband and wife, filed their joint Federal income tax return for the calendar year 1971 with the Internal Revenue Service, Ogden, Utah. They also filed joint Federal income tax returns for the calendar years 1972 and 1973. On their original petition in Docket No. 5901-75, relating to the year 1971, they listed their principal residence as South Lake Tahoe, California. They listed no address on their original petition in Docket No. 3579-76, relating to the years 1972 and 1973. On their amended petitions in both docket numbers, petitioners allege that their legal residence is in Ehrwald, Austria. Both Lucien Boyer ("Lucien") and Rika Boyer ("Rika") are professional ice skaters. Lucien, who was born in 1929, is a citizen of France, while Rika, who was born in 1934, is a citizen of West Germany. During the 1950's and 1960's, after having trained and competed as amateur skaters, both Lucien and Rika turned to professional skating and performed throughout Europe including the U.S.S.R., the United States, South America *111 and South Africa. [1] They were married in 1963, and thereafter performed for the most part as a team. Petitioners purchased land in Ehrwald, Austria, in 1964 for the price of Deutsch Marks ("D.M.") 30,000, or approximately $7,500, and in 1967 completed construction thereon of a single family residence at a cost of D.M. 100,000, or approximately $25,000. The house is now worth approximately $70,000. Ehrwald is located 22 kilometers, or 15 miles, from Garmisch Partenkirchen, West Germany, and is not far from Munich, West Germany, where Rika's parents resided. Garmisch Partenkirchen is a European ice skating center. Rika had received much of her training there, and both Lucien and Rika had performed there and had extensive professional associations there. Petitioners desired to be near Garmisch Partenkirchen but chose to build their residence in Ehrwald because it was easily accessible but afforded lower property costs. Since 1967 petitioners have maintained their house in Ehrwald, paid taxes and other expenses thereof, *112 and retained at least stand-by year-round utility services. Although the house is closed up in the winter, Rika's parents open it and keep it up during the rest of the year. Petitioners have furnished the house, and keep personal effects and memorabilia of their skating careers in it. Neither Lucien nor Rika is a citizen of Austria, neither has ever voted in Austria, and since 1968 neither has had any income in Austria nor has either filed an income tax return or paid income tax to Austria. Petitioners do not keep an automobile in Austria, but they do have access to Rika's parents' car in Munich. They maintain a joint checking account in Ehrwald. In 1968, Lucien and Rika were hired by Shipstads and Johnson Ice Follies ("Shipstads and Johnson") to perform in the United States in the Ice Follies. [2] The original employment contract obligated them to perform for one year, and gave Shipstads and Johnson the option to keep them on for an additional two years. From 1968 until July 1972, both Lucien and Rika performed as ice skaters for Shipstads and Johnson under a series of one year contracts. Each contract was concluded in March of one year, and covered the Ice Follies' production *113 season of approximately 10-1/2 months, running from June or July of that year through May of the following year. In July 1972, Lucien and Rika retired as performers. Lucien was retained for the following season as a skating coach, and has continued to serve in that capacity ever since. The two were called upon to perform again in January and February 1973, but otherwise Rika did not work between July 1972 and the end of 1973. She subsequently was employed by Shipstads and Johnson as a performance director. Although Lucien and Rika enjoyed an expectation of continued employment with Shipstads and Johnson from year to year, they could not be assured of employment for the following year until negotiations on their new contracts were completed in March of each year. Furthermore, it is a recognized fact among professional skaters that age imposes a limitation upon continued employment as a performer. Petitioners reached the age where they could no longer perform in 1972, and thereupon retired. Lucien *114 at that point was able to continue with Shipstads and Johnson as a coach, but was not guaranteed that such employment would continue indefinitely. Petitioners have at least a general intention of returning to Ehrwald, Austria, if and when they are no longer employed by Shipstads and Johnson. Petitioners entered the United States in 1968 under work visas, but in 1970 Shipstads and Johnson arranged for them to apply for, and obtain, alien registration cards, Form No. I-151 (as revised May 1, 1969), issued by the Immigration and Naturalization Service ("green cards"). As holders of green cards, petitioners had the status of permanent residents of the United States. Petitioners filed their 1971, 1972 and 1973 U.S. income tax returns as resident, not nonresident, aliens. When petitioners first came to the United States to work for Shipstads and Johnson, they accepted the suggestion of Bob and Helen Maxson, Shipstads and Johnson choreographers, that they use the Maxsons' Colorado Springs, Colorado, address as a convenient mailing address. The Maxsons knew the whereabouts of the Ice Follies at all times, and were able to forward mail to the Boyers during their travels. Lucien keeps *115 a car registered in Colorado, and has obtained a Colorado driver's license. In 1972, Lucien and Rika filed a joint resident Colorado state income tax return, and in both 1971 and 1972 they filed joint California nonresident income tax returns claiming their residence to be Colorado. The Boyers' 1971, 1972 and 1973 joint Federal income tax returns list their address as Colorado Springs, Colorado, and the same address appears on certain W-2 forms appended to the returns (but not those supplied by Shipstads and Johnson). The Boyers maintain a joint checking account in Colorado Springs. In 1971, the Boyers purchased a condominium apartment in South Lake Tahoe, California. They maintain this property as rental property, but they keep some personal effects in a locked storage area therein. Subsequent to the years in issue, at the advice of their then attorney, petitioners, in 1975, began to use South Lake Tahoe as their address. This address appeared on the original petition filed in Docket No. 5901-75. The Boyers have recently opened a joint checking account in South Lake Tahoe. The annual season of the Ice Follies, during which the Boyers' services were required, began in *116 June or early July and ran through the following May. Each season began with preparations and rehearsals lasting from June or July into late August or September. These rehearsals were held in San Francisco, California, in 1971 and 1972, but the record does not reveal where they were held in 1973. After completing rehearsals (and also giving performances in San Francisco and Oakland, California), the Ice Follies went on a national tour. The tour lasted approximately 34 weeks and involved performances in about 25-30 different cities in the United States and Canada. Lucien and Rika traveled with the company throughout the season, staying in hotels in each of the cities visited. [3] There was a vacation of 10-14 days at Christmas, and in addition a break of 4-6 weeks between the end of the season in May and the start of the new season. Lucien's *117 and Rika's duties with Shipstads and Johnson required that they spend approximately three months in each of the years 1971 and 1972, and an undisclosed period in 1973, in San Francisco, California. They were on the road for about 34 weeks in each year, performing in each city only 1-3 weeks. During their Christmas break in each of the three years here in issue, they vacationed in their condominium in South Lake Tahoe, California. During the break between seasons in about June of each year, it was the Boyers' practice to leave the United States and vacation in their house in Ehrwald, Austria. They spent four weeks in Ehrwald between May 14, 1972, and June 15, 1972, and approximately equivalent periods in both 1971 and 1973. During these stays in Ehrwald, the Boyers did not engage in any professional activities. On their joint Federal income tax returns for the calendar years 1971, 1972 and 1973, petitioners deducted $24,445, $19,275, and $14,884, respectively, as employee business expenses. The amount deducted in each year included substantial expenses for meals and lodging allegedly incurred while away from home in the pursuit of their trade or business of ice skaters and *118 skating coaches. The parties have now agreed that petitioners expended for meals and lodging in these three years $12,974.87, $9,585.59, and $8,249.25, respectively, in connection with their travel with the Ice Follies. The Commissioner has determined, however, that such amounts were not expended by petitioners while away from home in the pursuit of their trade or business, and are therefore not allowable deductions under section 162(a)(2). OPINION Petitioners Lucien and Rika Boyer are professional ice skaters. During the three years here in issue, Lucien was employed by the Shipstads and Johnson Ice Follies first as a performer and then as a skating coach. Rika performed with her husband in the Ice Follies during 1971 and the first half of 1972, but then retired as a performer (although she again performed in January and February 1973). Lucien's and Rika's work with the Ice Follies required that they travel throughout the United States and Canada, performing in approximately 25-30 different cities each season. They here seek a deduction, under section 162(a)(2), I.R.C. 1954, for their expenses for meals and lodging during their Ice Follies tours. [4]
*119 The deduction provided by section 162(a)(2) was designed to ease the burden on taxpayers who, because of their jobs, are required to incur extra expenses for meals and lodging above and beyond the expense of maintaining their family homes; it reflects Congressional concern both for unavoidable duplication of expenses and for the fact that meals and lodging are more costly for a person who must travel than they are for a person who can maintain a year-round home. James v. United States,308 F.2d 204, 206 (C.A. 9); Jones v. Commissioner, 54 T.C. 734, 740, affirmed 444 F.2d 508 (C.A. 5); Tucker v. Commissioner, 55 T.C. 783, 786; Michaels v. Commissioner, 53 T.C. 269, 274-75; Kroll v. Commissioner, 49 T.C. 557, 562. However, as the Court of Appeals for the Ninth Circuit noted in James, supra, 308 F.2d at 206: [Money] spent for food and lodging on a business trip is normally in part business expense and in part personal living expense [nondeductible under section 262]. When we are required to travel for business purposes, the cost of our food and shelter is increased: *120 continuing costs incurred at a permanent place of abode are duplicated, and we are compelled, in addition, to pay higher prices for our food and shelter than we would pay if not traveling. This increased cost is clearly attributable to the exigencies of business. On the other hand, since we must eat and sleep whether or not we are traveling, that portion of the cost of food and lodging while on business travel which would have been incurred even at home is actually a personal living expense. Given the administrative difficulty inherent in distinguishing the personal from the business elements, however, Congress chose to allow deduction of all expenses for meals and lodging, but to limit the deduction to those taxpayers who were "away from home". James v. United States, supra, 308 F.2d at 207. The question as to whether ice skaters like petitioners are entitled to deduct their travel expenses has already been before this Court in two cases. Hall v. Commissioner, 23 T.C.M. 930; Gooderham v. Commissioner, 23 T.C.M. 938. The claimed deductions were there approved.Like the petitioners herein the taxpayers in those cases were *121 performers in the Shipstads and Johnson Ice Follies. The only substantial question in this case is whether the petitioners herein should be treated as itinerants who had no home to be away from. [5] Petitioners contend that their residence in Ehrwald satisfies the "home" requirement. The matter is not free from doubt, and a number of the factual considerations stressed by the Government support its position. Nevertheless, we are persuaded by the record as a whole that the Ehrwald residence was petitioners' "home" within the statutory requirement. It would serve no useful purpose to review the various factors pro and con that lead us to this factual conclusion. We do, however, point out that the Ehrwald residence represented a substantial investment by petitioners, that it is now worth about $70,000, that petitioners pay the costs of maintaining it, that they spend the bulk of their time between seasons of the Ice Follies at their residence, and that they ultimately intend to return to it permanently when they retire. *122 The amount of the expenses now claimed is not in dispute, and we hold that petitioners, like the taxpayers in Hall and Gooderham, are entitled to the deductions. Decisions will be entered under Rule 155. Footnotes
1. Prior to 1968, petitioners performed in the United States for approximately two years in and around 1959, and for approximately six months in 1966.↩
2. Shipstads and Johnson operate their show under the names "Ice Follies" and "Holiday on Ice", but the term "Ice Follies" will be used hereinafter generally to refer to the show.↩
3. After July 1972, except for two months in 1973, Rika did not perform or otherwise work for Shipstads and Johnson, but she continued to travel with her husband. No deductions are claimed with respect to her expenses for periods when she was not working. Rika was reemployed by Shipstads and Johnson subsequent to the years in issue here.↩
4. No deduction is claimed on account of Rika's expenses during the period in which she herself was not employed by the Ice Follies, so there is no question raised as to the business relationship of the claimed deductions.↩
5. See James v. United States,supra, 308 F.2d 204; Brandl v. Commissioner,513 F.2d 697 (C.A. 6); Scotten v. Commissioner,391 F.2d 274 (C.A. 5), affirming a Memorandum Opinion of this Court; Bochner v. Commissioner,67 T.C. 824; Wirth v. Commissioner, 61 T.C. 855; cf. Rosenspan v. United States, 438 F.2d 905↩ (C.A. 2).