MILES W. IRELAND and JANICE IRELAND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ireland v. Commissioner
Docket Nos. 4892-77; 396-78; 1850-78.
United States Tax Court
T.C. Memo 1979-386; 1979 Tax Ct. Memo LEXIS 142; 39 T.C.M. (CCH) 193; T.C.M. (RIA) 79386; September 19, 1979, Filed F. Timothy Nicholls, for the petitioners. Gary F. Walker, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows: Docket No.
Year
Amount
4892-77
1974
$738.69
396-78
1975
758.13
1850-78
1976
412.00
Concessions having been made, the issues remaining for our decision are whether certain expenses for meals and transportation were incurred while away from home within the meaning of section 162(a)(2)[1] and, if so, whether the substantiation requirements of section 274(d) have been met. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners Miles W. Ireland and Janice Ireland, husband and wife, resided in Lowland, North Carolina9, at the time of filing the petitions herein. They filed their joint *144 Federal income tax returns for the years at issue with the Internal Revenue Service Center, Memphis, Tennessee. Mr. Ireland has lived in Lowland, North Carolina, a town on the Atlantic coast in the eastern part of the state, his entire life. He owns a home there, where he lives with his wife and daughter. He is registered to vote in North Carolina and pays property and income taxes in North Carolina. Prior to January 1, 1974, Mr. Ireland was a commercial fisherman.Commencing on that date and throughout the years in issue, Mr. Ireland was employed by Express Marine, Inc. (hereinafter Express Marine or the company), a company which is engaged in the business of operating tugboats and which has its principal office in Camden, New Jersey. The company operated about five tugboats, each of which had a crew of five consisting of a captain, mate, cook, and two engineers. About 80 percent of the men employed by Express Marine as crew lived in Lowland and the others lived in other towns in the eastern part of North Carolina. Mr. Ireland was assigned to the tugboat Alert, working first as cook and then as mate. Philadelphia, Pennsylvania, was the homeport of the Alert, that *145 is, it was registered with the United States Coast Guard in Philadelphia, but its work took it up and down the eastern seaboard and its activities were not centered in the Philadelphia area. Mr. Ireland worked on the Alert during the three years at issue, but he was subject to change of tugs at any time during the year. Mr. Ireland's employment required that he be "on duty" for two consecutive weeks and then "off duty" for two consecutive weeks. While on duty, he lived aboard the tugboat and performed the duties assigned to him. While off duty, he lived at his home in Lowland.He was not required to report to the company's office but, rather, reported directly to the tugboat at the point where it happened to be located on the date of a crew change. Similarly, when he completed a two-week period of work on board the tugboat, he would go ashore at the point where the tugboat happened to be at that time. Mr. Ireland traveled to and from the tugboat with his follow crew members in a car driven by one of the crew members. The evening before a crew change was to take place, Mr. Ireland would receive a call from the captain of the tugboat, who would inform him that the tug would *146 be at a certain port about noon the following day.Mr. Ireland would then call the other crew members and they would meet at a point designated by the driver (hereinafter the pick-up/drop-off point) at about 10:00 p.m. to 11:00 p.m., depending upon the distance to be traveled. From that point, the crew drove in a single car to the tugboat. They would stop for one meal on the way and would arrive at their destination the next day between 10:00 a.m. and 12:00 noon.The crew that they replaced would then drive home in the same car. Two weeks later that crew would drive the car to the tugboat and Mr. Ireland and his crew would drive home in it. They would stop for one meal. Mr. Ireland's wife would drive him to and from the pick-up/drop-off point and their residence, a distance of about 15 miles. At the time he began working for Express Marine, he was told by the company and the owner of the car that he would be charged $10 for each trip. He never questioned this arrangement and he never asked the company for reimbursement. Mr. Ireland believed that the owner of the car was also compensated by the company but he was not certain of this. It was his further understanding that he was *147 required to pay the driver because any amount that the company paid him was not sufficient to cover the expense of operating the car. In 1974 and 1975, the driver of the car in which Mr. Ireland traveled was also the owner. In 1976, the car in which Mr. Ireland traveled was owned by someone other than the person who drove Mr. Ireland and his crew. Agreements in effect between Express Marine and Inland Boatmen's Union of the Seafarers' International Union of North America, Atlantic Gulf, Lakes and Inland Waters District AFL-CIO contained the following provisions regarding transportation for crew members between their residences and the tugboat: The Port of Philadelphia shall be designated as the home port. When employees are required to change crews at the end of their work period or on orders of the Employer at other than the Port of Philadelphia, the Employer agrees to pay reasonable traveling expenses actually incurred for the relief and relieved crews to and from the boat to the home port or their homes whichever is closer. As in the past, crew change shall be accomplished by the on-coming crew traveling from home to boat in one car and the off-going crew driving that car *148 from boat back to home. Owner of car will receive the following compensation: January 1, 1974 to
January 15, 1976 to
January 14, 1976
December 30, 1976
Round Trip from N. Carolina
to Norfolk, VA. to car owner
$ 25.00
$ 50.70
Round Trip from N. Carolina
to Salisbury, and Reedville,
MD
40.00
81.12
Round Trip from N. Carolina
to Seaford, DE and Reedville,
MD
42.00
85.20
Round Trip from N. Carolina
to Chesapeake City, MD
and Reedville, MD
45.00
91.26
Round Trip from N. Carolina
to Delaware City, DE and
Reedville, MD
45.00
91.26
Round Trip from N. Carolina
to Wilmington, DE and
Reedville, MD
47.00
95.34
Round Trip from N. Carolina
to Washington, D.C. and
Reedville, MD
40.00
81.12
Round Trip from N. Carolina
to Baltimore, MD and
Reedville, MD
45.00
91.32
Round Trip from N. Carolina
to Philadelphia, PA and
Reedville, MD
55.00
111.54
Round Trip from N. Carolina
to Trenton, N.J. and
Reedville, MD
117.00
Reound Trip from N. Carolina
to Keasbey, N.J. and
Reedville, MD
67.00
135.90
Round Trip from N. Carolina
to New York, N.Y. and
Reedville, MD
152.10
Reound Trip from N. Carolina
to Pine Orchard CT and
Reedville, MD
93.00
187.68
*149 Mr. Ireland's schedule of crew changes for the years at issue was as follows: Change Date
Crew Change Location
1/1/74
Jersey City, N.J.
1/29/74
Jersey City, N.J.
2/12/74
Reedville, Va.
2/26/74
Norfolk, Va.
3/12/74
Trenton, N.J.
3/26/74
Reedville, Va.
4/9/74
Trenton, N.J.
4/23/74
Norfolk, Va.
5/7/74
Delair, N.J.
5/21/74
Delair, N.J.
6/4/74
Delair, N.J.
6/18/74
Delair, N.J.
7/2/74
Delaware City, Del.
7/16/74
Delair, N.J.
7/30/74
Delair, N.J.
8/13/74
Baltimore, Md.
8/27/74
Baltimore, Md.
9/10/74
Delair, N.J.
9/24/74
Delair, N.J.
10/8/74
Jersey City, N.J.
10/22/74
Chesapeake City, Md.
11/5/74
Delair, N.J.
11/19/74
Lewes, Del.
12/3/74
Delair, N.J.
12/17/74
Delair, N.J.
12/31/74
Delair, N.J.
1/14/75
Boston, Mass.
1/28/75
Camden, N.J.
2/11/75
Camden, N.J.
2/25/75
Port Reading, N.J.
3/11/75
Philadelphia, Pa.
3/25/75
Delaware City, Del.
4/8/75
Reedville, Va.
4/22/75
Reedville, Va.
5/6/75
Reedville, Va.
5/20/75
Annapolis, Md.
6/3/75
Camden, N.J.
6/17/75
Reedville, Va.
7/1/75
Wilmington, Del.
7/15/75
Philadelphia, Pa.
7/29/75
Annapolis, Md.
8/12/75
Camden, N.J.
8/26/75
Norfolk, Va.
9/9/75
Camden, N.J.
9/23/75
Lambert's Point, Va.
10/7/75
Norfolk, Va.
10/21/75
Norfolk, Va.
11/4/75
Camden, N.J.
11/18/75
Norfolk, Va.
12/2/75
Philadelphia, Pa.
12/16/75
Philadelphia, Pa.
12/30/75
Norfolk, Va.
1/13/76
Newport News, Va.
1/27/76
Norfolk, Va.
2/10/76
Paulsboro, N.J.
2/24/76
Camden, N.J.
3/9/76
Camden, N.J.
3/23/76
Norfolk, Va.
4/6/76
Camden, N.J.
4/20/76
Baltimore, Md.
5/4/76
Delair, N.J.
5/18/76
Delair, N.J.
6/1/76
Camden, N.J.
6/15/76
Camden, N.J.
6/29/76
Paulsboro, N.J.
7/13/76
Lambert's Point, Va.
7/27/76
Burlington, N.J.
8/10/76
Paulsboro, N.J.
8/24/76
Camden, N.J.
9/7/76
Baltimore, Md.
9/22/76
Baltimore, Md.
10/5/76
Baltimore, Md.
10/19/76
Camden, N.J.
11/2/76
Lambert's Point, Va.
11/16/76
Baltimore, Md.
11/30/76
Paulsboro, N.J.
12/14/76
Baltimore, Md.
12/28/76
Norfolk, Va.
*150 Except for three occasions, Mr. Ireland drove to and from the location of the crew change with his fellow crew members. On two occasions, his wife drove him because he was not traveling at the same time as the rest of the crew and, on one occasion, the crew change took place in Boston, Massachusetts, and the company paid the airplane fare of the crew. Mr. Ireland did not obtain a receipt from the driver of the car or for his meals expense and he did not keep a contemporaneous diary or other account of his expenses or mileage. Express Marine kept a record of the times and locations of his crew changes. OPINION Petitioners assert that Mr. Ireland was away from home and, therefore, they are entitled to deduct his travel expenses, including $10 for each trip to and from the location of a crew change which he claims he paid the driver of the car, the cost of meals which he claims he bought on each such trip, and an allowance of 15 cents per mile for each mile traveled between his home and the pick-up/drop-off location. The amounts so claimed are set forth in the following table: 1974
1975
1976
Travel by
car
$260.00
$250.00
$260.00
Meals
71.50
78.00
84.50
Mileage
117.00
117.00
117.00
*151 Respondent contests petitioners' contentions on two grounds: (1) that Mr. Ireland was not "away from home" within the meaning of section 162(a)(2) and that his claimed expenditures were personal and nondeductible under section 262; (2) that, in any event, petitioners have failed to substantiate their claimed expenditures as required by section 274(d).
Section 262 prohibits the deduction of personal living and family expenses and, thus, expenses for meals, lodging, and transportation are generally non-deductible. Section 1.262-1(b)(5), Income Tax Regs.Section 162(a)(2), however, allows a taxpayer to deduct expenses incurred for meals, lodging, and transportation while away from home in pursuit of a trade or business. In order to be deductible, travel expenses must satisfy three conditions: (1) they must be reasonable and necessary; (2) they must be incurred while from home; (3) they must be incurred in the pursuit of a trade or business. Commissioner v. Flowers,326 U.S. 465, 470 (1946).
Respondent determined that expenses for transportation *152 and meals, incurred by Mr. Ireland between his residence and the various points where he met or departed from the tugboat on which he worked, were not deductible on the theory that Mr. Ireland's tax home was Philadelphia, which is the homeport of the boat. Petitioners contend that his residence was his tax home and, thus, the expenses were incurred while away from home. We have generally defined the word "home," as used in section 162(a)(2), to refer to the vicinity of a taxpayer's principal place of business and not the place where his personal residence is located, if different from his principal place of employment. Daly v. Commissioner,72 T.C. 190 (1979); Kroll v. Commissioner,49 T.C. 557, 561-562 (1968). Cf. Commissioner v. Flowers,supra.The result of this definition is that commuting expenses are not deductible, a rule that recognizes that the distance traveled and amount spent is generally dictated by personal preferences. Anderson v. Commissioner,60 T.C. 834, 835 (1973). On the other hand, if an *153 individual accepts temporary employment outside the vicinity in which he lives, his travel expenses are generally deductible because it would not be reasonable to expect him to move his residence to the vicinity of his temporary employment. Tucker v. Commissioner,55 T.C. 783, 786 (1971). Similarly, if a taxpayer does not have a principal place of business, his permanent residence is his home for tax purposes. See Rambo v. Commissioner,69 T.C. 920 (1978); Dean v. Commissioner,54 T.C. 663 (1970); Leach v. Commissioner,12 T.C. 20 (1949); Schreiner v. McCrory,186 F.Supp. 819 (D. Neb. 1960).A person who has neither a permanent residence nor a principal place of business is an itinerant and has no home to be away from for purposes of section 162(a)(2). Wirth v. Commissioner,61 T.C. 855, 859 (1974); Hicks v. Commissioner,47 T.C. 71 (1966). The common question that must be answered in each case is whether the expenses were compelled by the exigencies of the taxpayer's business or by his personal preferences. Commissioner v. Flowers,326 U.S. at 474. *154 The issue is purely factual and the burden of proof is on the petitioners. Rambo v. Commissioner,69 T.C. at 923-924; Rule 142(a), Tax Court Rules of Practice and Procedure.
We think that Mr. Ireland's residence was his "home" for purposes of section 162(a)(2). Respondent's argument that Philadelphia is Mr. Ireland's tax home because it is the homeport of the tugboat is without merit. Although the tugboat was registered with the United States Coast Guard as having its homeport in Philadelphia, Mr. Ireland rarely and only coincidentally met the tugboat or departed from it in Philadelphia. In fact, in 1974 and 1976, he never had a crew change in Philadelphia and, in 1975, only 4 out of 26 crew changes took place in Philadelphia. In this respect, this case is clearly distinguishable from the line of cases concerning ship pilots who operated out of one port, albeit the ports were often fairly large, and who have been held to have their tax homes in the vicinity of such port. Smith v. Warren,388 F.2d 671 (9th Cir. 1968); Steinhort v. Commissioner,335 F.2d 496 (5th Cir. 1964); Heuer v. Commissioner,32 T.C. 947 (1959), *155 affd. per curiam 283 F.2d 865 (5th Cir. 1960). Further, although the employment contract provides that Philadelphia is the homeport and that employees' travel expenses will be reimbursed when the crew changes at other ports, the contract further provides that the crew will travel in a car together and sets forth a schedule of payments that the owner of the car will receive. That schedule compensates the owner for trips to and from Philadelphia. Thus, notwithstanding the general provisions of the contract, the specific provisions clearly do not treat Philadelphia differently from other ports. The fact that the company hired 80 per cent of its crew from Lowland and the rest from nearby towns and was willing to subsidize private car transportation further supports the conclusion that Philadelphia was not such a permanent location as to require it to be treated as Mr. Ireland's tax home. The fact that he was subject to assignment any place along the east coast and that his assignments were subject to seniority considerations (particularly in light of the fact that his employment with the company only started on January 1, 1974) is a further element militating in favor *156 of petitioners' position. [2] Moreover, we note that Lowland is not located inland but rather on the very coast along which the Express Marine tugs plied and is more centrally located along the eastern seaboard than is Philadelphia. Compare Daly v. Commissioner,supra.Indeed, it should be noted that on a significant number of occasions during the taxable years at issue, Mr. Ireland's crew changes occurred at points closer to Lowland than Philadelphia. Although Mr. Ireland had no principal place of business, he clearly had a permanent residence and was not an itinerant for purposes of section 162(a)(2). He had lived in Lowland all his life, he owned a home there where he lived with his wife and child when he was not on the tugboat, he was registered to vote in North Carolina, and he paid taxes in North Carolina. In sum, the nature of his business required that he at least be prepared to be at a different place every two weeks for a crew change. He had no regular place of duty that could be called his tax home or to which he could reasonably have been expected to move. Accordingly, *157 the expenses he incurred traveling between his residence in Lowland and the tugboat to which he was assigned are deductible under section 162(a)(2) to the extent that they can properly be substantiated. See Rambo v. Commissioner,supra;Dean v. Commissioner,supra;Leach v. Commissioner,supra.
The requirements of section 162(a)(2) having been met, deductibility then depends upon whether petitioners have complied with the substantiation requirements of section 274(d).That section provides that no deduction shall be allowed for traveling expenses incurred while away from home, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement the amount of such expense, the time and place of travel, and the business purpose of the travel. By enactment of this section, Congress intended to abrogate the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), under which courts approximated a taxpayer's expenses if the evidence indicated the taxpayer had incurred *158 deductible expenses but the exact amount could not be determined. H. Rept. No. 1447, 87th Cong., 2d Sess. 23 (1962), 1962-3 C.B. 402, 427; S. Rept. No. 1881, 87th Cong., 2d Sess. 35 (1962), 1962-3 C.B. 703, 741. Pursuant to his specific authority under section 274(i), respondent has promulgated detailed regulations setting forth the substantiation that is required. A taxpayer must substantiate his expenses by "adequate records" or by "sufficient evidence" unless he is exempted from such requirements by "exceptional circumstances" or loss of records due to circumstances beyond his control. Section 1.274-5(c), Income Tax Regs.
Petitioners concede that they have not substantiated Mr. Ireland's expenses by the "adequate records" method because he kept no contemporaneous account or documentary evidence. See section 1.274-5(c)(2), Income Tax Regs. They claim, however, that his expenses between home and the pick-up/drop-off point are local transportation, not travel, expenses and thus are not subject to the requirements *159 of section 274(d). With respect to his expenses between the pick-up/drop-off point and the tugboat, petitioners contend that they are entitled to the deductions under either the "sufficient evidence" method or the "exceptional circumstances" method. We reject petitioners' contention that a portion of Mr. Ireland's expenses constitute local transportation. We have held that, during the years in question, Mr. Ireland's tax home was his personal residence and that his expenses between his home and his tugboat are deductible as travel expenses while away from home under section 162(a)(2). The distinction between local transportation and travel while away from home does not depend upon whether a taxpayer must travel to an intermediate point such as a pick-up/drop-off point, an airport, or a train station but, rather, depends upon whether the taxpayer is away overnight or for a period requiring sleep or rest. See United States v. Correll,389 U.S. 299 (1967); Turner v. Commissioner,56 T.C. 27 (1971). If the "overnight" test applies, as it does herein, there *160 can be no bifurcation and all the traveling expenses must be substantiated in accordance with the requirements of section 274 and the regulations thereunder. As far as substantiation is concerned, the only evidence of Mr. Ireland's travel expenses is his testimony that he travelled about 15 miles to the pick-up/drop-off point and his schedule of crew changes, together with his testimony relating thereto. This is insufficient to meet the "sufficient evidence" test. See Puckett v. Commissioner,56 T.C. 1092, 1096-1097 (1971); section 1.274-5(c)(3), Income Tax Regs. Further, petitioners have not shown any exceptional circumstances that would entitle them to exemption from such requirements. Accordingly, section 274(d) bars the deduction of expenses incurred between Mr. Ireland's residence and the pick-up/drop-off points. Similarly, petitioners are not entitled to a deduction for M. Ireland's expenditures for meals because they presented no evidence other than Mr. Ireland's testimony and the schedule of crew changes. There is no evidence whatsoever of the amount he spent other than his own estimate and he has not shown any satisfactory *161 reason why he could not have kept a diary or other account of his expenses. See Puckett v. Commissioner,supra at 1096. With respect to the $10 claimed to have been paid by Mr. Ireland for each trip between the tugboat and his home, petitioners have also failed to meet the substantiation requirements of section 274(d). That section provides that no deduction shall be allowed "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense * * *, (B), the time and place of the travel * * *, (C) the business purpose of the expense." (Emphasis added.) It is well established that a taxpayer must satisfy the substantiation requirements in respect to each and every element of section 274(d). Buddy Schoellkopf Products,Inc. v. Commissioner,65 T.C. 640, 643 (1975); Sanford v. Commissioner,50 T.C. 823, 828-829 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). We are satisfied that the record herein (particularly the statement from *162 the company as to the dates and locations of the crew changes and the provision in the union contract for the use of personal cars to drive employees from home to the tugboat) is sufficient to satisfy the corroborative evidence requirement insofar as elements (B) and (C) are concerned. But, aside from Mr. Ireland's own testimony, the record is utterly devoid of any evidence that he paid $10 for each trip. Granted that the corroborative evidence requirement may be met in a variety of ways (see LaForge v. Commissioner,434 F.2d 370 (2d Cir. 1970), remanding 53 T.C. 41 (1969)), the statute requires some such evidence. Petitioners seek to avoid the requirements by invoking section 1.274-5(c)(4), Income Tax Regs., which provides for relief from the adequate records and "other sufficient evidence" requirements where the taxpayer shows that he was unable to obtain the necessary evidence and has presented other evidence having "the highest degree of probative value possible under the circumstances." Petitioners assert that the "exceptional circumstances" arise from the facts that the payments were made in cash and that they were *163 unable to procure the testimony of the driver of the car to whom the money was purportedly paid. But, even assuming that the inability to produce the driver was excusable (an issue we do not decide), no explanation was offered as to why another rider in the car who might well have witnessed some or all of the $10purported payments was not produced. However probative Mr. Ireland's own testimony may be, the hard fact is that it is not sufficient to enable petitioners to satisfy the statutory requirement of corroborative evidence as to amount. Kennelly v. Commissioner,56 T.C. 936, 943 (1971), affd. by order 456 F.2d 1335 (2d Cir. 1972). Cf. Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225, 1235 (1971). Decisions will be entered for the respondent.
Footnotes
1. All section references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question.↩
2. Cf. Echols v. Commissioner,T.C. Memo. 1976-264↩.