T.C. Summary Opinion 2008-41

UNITED STATES TAX COURT

ERIC D. WALKER AND LYNN WALKER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7566-06S.          Filed April 22, 2008.

Eric D. Walker, pro se.

Brian A. Pfeifer, for respondent.

CARLUZZO, Special Trial Judge:  This case was heard
pursuant to the provisions of section 7463.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

---

[1]  Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, in effect for the
relevant period.

other court, and this opinion shall not be cited as precedent for any other case.

In a notice of deficiency issued to petitioners on January 19, 2006, respondent determined a $5,975 deficiency in and a $1,195 section 6662(a) accuracy-related penalty with respect to petitioners' 2002 Federal income tax.

The issues for decision are:  (1) Whether petitioners are entitled to certain trade or business expense deductions, some claimed on a Schedule A, Itemized Deductions, and some claimed on a Schedule C, Profit or Loss From Business; and (2) whether petitioners are liable for the accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. Petitioners married on March 31, 2002.  They filed a timely joint Federal income tax return for that year.  At the time the petition was filed, they resided in Florida.

Eric D. Walker (petitioner) is an electrician who at all times relevant was a member of Local 613 of the International Brotherhood of Electrical Workers (IBEW).  Local 613 is located in Atlanta, Georgia, but petitioner did not work within the jurisdiction of Local 613, or anywhere within the State of Georgia, during 2002.  Instead, he traveled repeatedly up and down the east coast from Massachusetts to Florida in search of or in connection with available union-based employment

opportunities. IBEW procedures required that he announce his availability for employment in any given location by visiting the local chapter of the IBEW and signing whatever paperwork was required. This procedure had to be repeated periodically as long as petitioner was unemployed, which he was during part of 2002, and continued to look for jobs.

Although he actively sought employment using the process described above throughout 2002, petitioner was employed only from time to time from May 1 through November 1, 2002, and only for various employers in New Jersey. While working in New Jersey petitioner stayed in a YMCA or in a rented house. Petitioner spent 216 days in New Jersey during 2002, including those days when he was present there either working or looking for work.

Following his marriage in March, petitioner spent only 3 days in Georgia. Lynn Walker lived with her mother in Florida during 2002, both before and after petitioners were married. Petitioner spent a fair amount of time in Florida during that year.[2] As of the end of November 2002, petitioner considered that his residence was in Florida.

---

[2] Petitioner was in Florida 25 days during January; 7 days during February; 12 days during March; 9 days during April; 3 days during June; 6 days during September; 8 days during November; and all of December.

Petitioners' 2002 self-prepared, joint Federal income tax return was timely filed.  That return includes a Schedule C and a Schedule A.  The Schedule C identifies the business as "Spinal Connection Rehab and Wellness" and shows the proprietor as Lynn Walker.  There is no income reported on the Schedule C, and various deductions totaling $9,087 result in a net loss in that amount which is claimed as a deduction on petitioners' 2002 return.  As relevant here, on the Schedule A, petitioners claimed a $32,525 unreimbursed employee business expense deduction, most of which is attributable to meals and lodging expenses.

Petitioners also claimed a $15,218 loss from an S corporation on their 2002 return.  That loss is identified as a "nonpassive loss from [a] Schedule K-1" issued to petitioners by Spinal Connection Rehab and Wellness.

In the above-referenced notice of deficiency, respondent: (1) Disallowed the deduction for the net loss reported on the Schedule C; (2) disallowed a portion of the unreimbursed employee business expense deduction claimed on the Schedule A; (3) allowed the standard deduction applicable to petitioners' filing status as the remaining itemized deductions respondent allowed totaled less than the standard deduction;[3] and (4) imposed an accuracy-

---

[3] The itemized deductions otherwise allowed are: (1) Taxes--$972; (2) Gifts to Charity--$745; and (3) Miscellaneous deductions, including unreimbursed employee business expenses--$5,498, before the application of sec. 67(a).

related penalty under section 6662(a) upon the ground that, among other reasons, the underpayment of tax required to be shown on petitioners' 2002 return is a substantial understatement of income tax. Other adjustments made in the notice of deficiency are computational or have been agreed upon by the parties.

<u>Discussion</u>

1. <u>Deduction for Net Loss Claimed on the Schedule C</u>

Petitioners now agree that they are not entitled to a deduction for the net loss shown on the Schedule C. Although less than certain, it appears that the expenses that generated the loss might have been duplicated in the loss claimed from the above-referenced S corporation. That loss has not been disallowed.

2. <u>Disallowed Portion of the Employee Business Expense Deduction</u>

According to the notice of deficiency, the portion of the employee business expenses deduction attributable to "travel, meals and lodging" was disallowed because respondent determined that those expenses, if paid or incurred, were not paid or incurred while petitioner was traveling away from home in pursuit of his employment. According to respondent, petitioner maintained "no fixed place of abode or business locality," consequently, "each place where * * * [petitioner worked became his] principal place of business and * * * tax home." According to petitioner, his residence and tax home, at least until the end

of November 2002, was in Stockbridge, Georgia, where he lived with his brother in his brother's house. Petitioner now acknowledges that amounts claimed on his 2002 return for lodging were overstated, but claims entitlement to: (1) A portion of the claimed deduction for lodging; and (2) the entire claimed deduction for meals.

Expenses incurred by an individual for meals and lodging are normally considered nondeductible personal or living expenses. Sec. 262(a). On the other hand, expenses paid or incurred for meals and lodging, if properly substantiated, are deductible if paid or incurred by an individual while traveling away from home in pursuit of the individual's trade or business. Secs. 162(a)(2), 274(d). In this regard, the reference to the individual's trade or business includes the trade or business of being an employee, O'Malley v. Commissioner, 91 T.C. 352, 363-364 (1988), and the reference to the individual's home means the individual's tax home, Henderson v. Commissioner, T.C. Memo. 1995-559, affd. 143 F.3d 497 (9th Cir. 1998).

In general, the location of an individual's tax home is the location of his or her principal place of employment. Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981). If, during the taxable year, the individual has no principal place of employment, this Court considers the individual's permanent place of residence to be his or her tax

home.  <u>Rambo v. Commissioner</u>, 69 T.C. 920, 923-925 (1978).  If an individual has no principal place of employment or permanent residence during the taxable year, then this Court considers that individual to have no tax home from which the individual can be away from for purposes of deducting meals and lodging expenses otherwise deductible under section 162(a)(2).  <u>Wirth v. Commissioner</u>, 61 T.C. 855, 859 (1974).

Petitioner's profession and status as an IBEW member required that he seek and/or accept employment on a temporary basis in various locations during 2002.  He had no principal place of business during that year.[4]  Whether petitioner had a permanent place of residence during 2002 is questionable.  If he did, then it was at his brother's house only up until the date of his wedding on March 31, and it was in Florida at some point starting in November.  The meals and lodging expense deductions here in dispute relate to the period between those dates, and the record does not support a finding that he paid or incurred any living expense in connection with his brother's house or any other "permanent place of residence" while at the same time he was present and working in New Jersey or elsewhere.  See <u>Kroll v.</u>

---

[4]  We disagree with the suggestion made in the notice of deficiency that New Jersey was petitioner's tax home during 2002. His employment there was clearly temporary.  This distinction, however, makes no difference to whether petitioner is entitled to deduct expenses for meals and lodging while working in New Jersey.

Commissioner, 49 T.C. 557, 562 (1968) (noting that the purpose of section 162(a)(2) is to "mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses").

Because petitioner had neither a principal permanent place of residence nor a principal place of employment during the period to which the deductions for meals and lodging expenses relate, he is not considered to have a tax home for that period. Because the deductions for meals and lodging expenses relate to a period for which petitioner had no tax home, he is not entitled to those deductions. Respondent's disallowance of the portion of the employee business expense deduction attributable to amounts for meals and lodging is sustained.

Respondent acknowledges that petitioner is entitled to tolls and vehicle expenses incurred in connection with his search for employment during 2002. The amounts already allowed for such expenses exceed the amounts petitioners substantiated and, when taken into account with other itemized deductions allowed or not challenged, do not exceed the $7,850 standard deduction applicable to petitioners' filing status. See sec. 63(b) and (c). It is unnecessary, therefore, to consider petitioners' entitlement to such deductions any further, and respondent's allowance of the standard deduction in lieu of the itemized

deductions otherwise claimed and not disallowed is sustained.

3. <u>The Section 6662(a) Accuracy-Related Penalty</u>

Section 6662(a) imposes an accuracy-related penalty of 20 percent of any portion of an underpayment of tax, if among other reasons, the underpayment is attributable to a substantial understatement of income tax. Sec. 6662(b)(2), (d). An understatement of income tax is a substantial understatement of income tax if it exceeds the greater of $5,000 or 10 percent of the tax required to be shown on the taxpayer's return.[5] Sec. 6662(d)(1). Ignoring conditions not relevant here, for purposes of section 6662 an understatement is defined as the excess of the amount of the tax required to be shown on the taxpayer's return over the amount of the tax which is shown on the return. Sec. 6662(d)(2)(A). In this case the understatement of income tax is computed in the same manner as and is equal to the deficiency in dispute; that is, $5,975. See secs. 6211, 6662(d)(2).

Under section 7491(c) respondent has the burden of production with respect to the accuracy-related penalty under section 6662(a). To meet that burden, respondent must come forward with sufficient evidence to show that imposition of the penalty is appropriate. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). We have sustained, or petitioners have

---

[5] Ten percent of the tax required to be shown on petitioners' 2002 return is $892.50.

conceded, the adjustments in the notice of deficiency that give rise to the deficiency. Respondent has satisfied his burden of production under sec. 7491(c) with respect to the accuracy-related penalty under section 6662(a) determined in the notice of deficiency because the underpayment of tax exceeds $5,000.

The accuracy-related penalty does not apply to any part of an underpayment of tax if it is shown the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Petitioners bear the burden of proving that they had reasonable cause and acted in good faith with respect to the underpayment. See Higbee v. Commissioner, supra at 449. This they have failed to do. Respondent's imposition of the section 6662(a) accuracy-related penalty is sustained.

To reflect the foregoing,

Decision will be entered

for respondent.