T.C. Summary Opinion 2010-143


UNITED STATES TAX COURT


ROCKWOOD GEWANNA SUMMERFIELD, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13856-09S.          Filed September 23, 2010.


<u>Peter Andrew Lowy</u>, for petitioner.

<u>Benjamin J. Peeler</u>, for respondent.


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2006, the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's 2006 Federal income tax of $5,333.

All but one of the issues in this case have been resolved by the parties in a Stipulation Of Settled Issues. The remaining issue is whether petitioner is entitled to a deduction for travel expenses as claimed on his Federal income tax return for 2006. The resolution of this issue requires that we decide whether, in 2006, petitioner had a "tax home" within the meaning of section 162(a)(2). If petitioner did not, then he is not entitled to the deduction in issue; but if petitioner did, then we must also decide where his tax home was and the amount of the deduction.

## Background

Many of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioner resided in the State of Texas "due to taking a temporary job" with a company in Houston, Texas.[2]

---

[2] So stipulated. In the petition, petitioner listed a mailing address in Texas, but specified Florida as his State of legal residence. See sec. 7482(b)(1)(A).

By profession petitioner is, and has been for many years, a plumber/pipefitter. As such, petitioner is a member of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (UA).[3]

Throughout his professional career, petitioner has been a member of UA Local 5, also known as Plumbers Local Union 5.[4] UA Local 5 has geographical jurisdiction over the metropolitan Washington, D.C. area. Petitioner was initiated into UA Local 5 as an apprentice in December 1984 and achieved journeyman status in June 1988.

Petitioner has never undertaken to transfer his membership to another local union but has instead chosen to remain a member of UA Local 5 throughout his professional career because of his perception that, except for a period in the late '80s and early

---

[3] The UA is a multicraft union with more than 325,000 members throughout the United States and Canada who engage in the fabrication, installation, and servicing of various piping systems. United Association, http://www.ua.org/aboutua.asp. The UA includes pipefitters and plumbers, as well as other related tradespersons such as welders, sprinklerfitters, and service technicians for heating, ventilation, air conditioning, and refrigeration (HVACR). Id. Pipefitters (also known as steamfitters) lay out, fabricate, assemble, install, maintain, and repair piping systems that typically operate under high pressure and that transport all types of fluids, slurries, and gases in industrial, commercial, and residential contexts. Id. Plumbers install, repair, maintain, and service piping and plumbing systems and equipment used for potable water distribution, sanitary storm water systems, and waste disposal; plumbers also work on technical installations for medical gas and other health and safety systems. Id.

[4] See http://www.local5plumbers.org.

'90s, "Washington, D.C., always seems to have some kind of work even when the rest of the country doesn't."

For most if not all of his career as a journeyman, petitioner has specialized in industrial and commercial projects involving work on structures such as oil refineries, power plants, hospitals, and schools. Petitioner is also certified to work on medical gas systems found in hospitals.

As a journeyman, petitioner typically works in various locations on projects of limited duration. The length of these projects generally ranges from a few days or a week to a couple of months.

Generally speaking, petitioner finds work by signing the out-of-work list (Referral Book) at the business office of UA Local 5 in Washington, D.C., and waiting for his name to come to the top of the list. In order to remain on the out-of-work list and therefore be eligible for an assignment to a project, petitioner is required to sign the Referral Book every 30 days when he is without work, and he must do this in person by returning to the business office of UA Local 5 in Washington, D.C.

Petitioner was formerly married, and he and his then-wife lived in Maryland. In 2001 the couple separated, and "a pretty bitter divorce" followed in 2003.

In November 2002, petitioner went to Florida at the request of his father, who was retired and caring for petitioner's seriously-ill mother, who subsequently died in 2004. Petitioner's parents owned a house in Ocala, Florida. Petitioner obtained a Florida driver's license and registered to vote in Florida; he also registered his vehicles in Florida and paid applicable licensing and registration fees.

During 2006 petitioner worked for nine different employers on nine different projects for the following periods and at the following locations:

| Period | Location |
|---|---|
| 9/12/05 – 1/23/06 | Metro Washington, D.C. |
| 2/6/06 – 3/30/06 | Chalmette, LA (Exxon-Mobil oil refinery) |
| 4/3/06 – 5/1/06 | Fort Riley, KS (US Army base) |
| 5/9/06 – 5/19/06 | Paducah, KY |
| 6/7/06 – 6/16/06 | Metro Washington, D.C. |
| 6/19/06 – 6/22/06 | Metro Washington, D.C. |
| 7/3/06 – 7/7/06 | Metro Washington, D.C. |
| 7/10/06 – 7/30/06 | McPherson, KS (Valero oil refinery) |
| 8/14/06 – 10/22/06 | Washington, D.C. (Children's Hospital) |

Petitioner traveled to all of the foregoing jobsites in his Chevy Trailblazer. He took with him worktools, as well as a microwave oven, coffeepot, and other similar necessities of everyday life. He sought out economical accommodations and negotiated for weekly rates. On occasion he shared a room with another pipefitter or tradesman in order to minimize expenses.

Petitioner received no reimbursement from either his union or any employer for travel expenses.

When he was not working, petitioner returned to Florida. Petitioner did not maintain a separate abode but stayed with his father in Ocala.[5] Petitioner did not pay rent; however, he did contribute to household expenses, but only during the time that he was actually staying with his father.[6]

Petitioner was unemployed for the last 2 months of 2006 because of an injury sustained in a motorcycle mishap. During that period he collected unemployment insurance benefits from the State of Florida.

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2006. On his return, petitioner itemized his deductions on Schedule A, Itemized Deductions. Among those claimed was one for unreimbursed employee business expenses. Petitioner did not claim any deduction for either mortgage interest or real estate tax.

---

[5] Petitioner did maintain a storage unit in Orlando, Fla., for some of his personal effects.

[6] At trial, petitioner testified that he did not pay rent to his father, "the reason being because I'm running halfway around the country three-quarters, nine-tenths of the year. When I'm there, I do contribute to the household. I mean, I'm running up his water because I'm taking showers, extra electricity, you know, whatever the case."

## Discussion[7]

Generally, outlays for food and shelter are considered personal expenses and are not deductible. Sec. 262. However, section 162(a)(2) allows a taxpayer to deduct traveling expenses (including amounts expended for meals and lodging) that are paid or incurred while "away from home" in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465 (1946); Brandl v. Commissioner, 513 F.2d 697 (6th Cir. 1975), affg. T.C. Memo. 1974-160; Bochner v. Commissioner, 67 T.C. 824, 827 (1977).

Respondent contends that petitioner had no tax home and was therefore not "away from home" when he incurred the expenses in issue. In contrast, petitioner contends that Ocala, Florida, was his tax home and that he was therefore "away from home" when working at various projects in Washington, D.C., and elsewhere around the country.

As a general rule, a taxpayer's principal place of employment is the taxpayer's tax home. Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). An employee without a principal place of business may treat a permanent place of residence at which the employee incurs substantial continuing living expenses as his or her tax home. Weidekamp v. Commissioner, 29 T.C. 16, 21 (1957). Where "the taxpayer has neither a principal place of business nor

---

[7] We decide this case without regard to the burden of proof.

a permanent residence, he has no tax home from which he can be away.  His home is wherever he happens to be." Barone v. Commissioner, 85 T.C. 462, 465 (1985), affd. without published opinion 807 F.2d 177 (9th Cir. 1986); see Michel v. Commissioner, 629 F.2d 1071, 1073-1074 (5th Cir. 1980), affg. T.C. Memo. 1977-345.

Was Ocala, Florida, Petitioner's Tax Home?

If petitioner did not have a principal place of employment, as both parties implicitly assume, then resolution of the tax home issue is simple and straightforward.  Thus, the law is clear that the purpose of the "away from home" requirement of section 162(a)(2) is to mitigate the burden of the taxpayer who, because of the exigencies of his or her trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses.  Henderson v. Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), affg. T.C. Memo. 1995-559; Rosenspan v. United States, 438 F.2d 905, 912 (2d Cir. 1971); Wirth v. Commissioner, 61 T.C. 855, 859 (1974); Kroll v. Commissioner, supra at 561-562; Hicks v. Commissioner, 47 T.C. 71, 74 (1966).  An obvious precondition to a taxpayer being away from home is that the taxpayer have a home.  See Bochner v. Commissioner, supra at 828. This means that the taxpayer must have incurred substantial continuing living expenses at a permanent place of residence and must also have paid the expenses incurred in connection with his

or her business while on the road.  See <u>Brandl v. Commissioner</u>, <u>supra</u> at 699; <u>James v. United States</u>, 308 F.2d 204 (9th Cir. 1962); <u>Bochner v. Commissioner</u>, <u>supra</u> at 828.

In the instant case, petitioner did have some ties to the State of Florida.  But significantly, and indeed determinatively, petitioner bore no duplicate living expenses.  Petitioner did not maintain a separate abode but stayed with his father in Ocala. He did not make mortgage payments or pay rent, and he contributed to household expenses only while he was actually staying with his father.[8]  These contributions are not of the type considered to be costs of maintaining a home such that the expenses related to petitioner's life on the road would be redundant.[9]  In short, Ocala was not petitioner's tax home in 2006.

<u>Was Metro Washington, D.C., Petitioner's Tax Home?</u>

As previously indicated, both parties implicitly assume that petitioner had no principal place of employment.  However, the record belies such assumption.  Thus, we conclude, based on the totality of the following six factors, that the metropolitan

---

[8]  At trial, petitioner acknowledged that his father paid the mortgage on the house and that when his mother died in 2004 he (i.e., petitioner) did not inherit any interest in the house. Presumably petitioner's father also paid the real estate tax on the house because petitioner claimed no deduction for real estate tax on Schedule A of his 2006 return.

[9]  We reject any suggestion that payment of rent on a storage unit is equivalent to maintaining a household.

Washington, D.C. area was petitioner's principal place of employment in 2006.

First, petitioner was a member of UA Local 5 in Washington, D.C.

Second, petitioner was a member of UA Local 5 because, as he testified at trial, "Washington, D.C. has work most of the time".

Third, petitioner generally found work by signing the Referral Book at the business office of UA Local 5 in Washington, D.C., and waiting for his name to come to the top of the out-of-work list.

Fourth, in order to remain on the out-of-work list and therefore be eligible for an assignment to a project, petitioner was required to sign the Referral Book in person at the business office of UA Local 5 in Washington, D.C., every 30 days when he was without work.

Fifth, more than one-half of the jobsites where petitioner worked in 2006 were in the metropolitan Washington, D.C. area.

Sixth, approximately one-half of petitioner's workdays in 2006 were spent at jobsites in the metropolitan Washington, D.C. area.

Because the metropolitan Washington, D.C. area was petitioner's principal place of employment in 2006, we hold that metropolitan Washington D.C., was petitioner's tax home for that year. See Kroll v. Commissioner, 49 T.C. at 561-562.

Amount of Deduction

Because petitioner had a tax home in 2006, he is entitled to a deduction under section 162(a)(2) for traveling expenses. Those expenses include lodging, meals and incidental expenses, and mileage while on business "away from home", i.e., away from petitioner's tax home in Washington, D.C.

Regarding lodging, petitioner is entitled to deduct actual expenses as stipulated by the parties variously as "lodging", "hotel", and "hotel lodging", except that petitioner is not entitled to deduct either (1) hotel costs incurred on or about August 6 and 22, 2006, in traveling between Washington, D.C., and Ocala, Florida, as those costs were personal in nature; or (2) rent paid in the metropolitan Washington, D.C. area, as petitioner was not "away from home" when he was at his tax home. In addition, petitioner is entitled to deduct the $8 daily lodging cost he incurred in staying at the FEMA camp while he was working at the Exxon-Mobil oil refinery in Chalmette, Louisiana.

Regarding meals and incidental expenses, the parties appear to agree that petitioner is entitled to a per diem allowance based on Rev. Proc. 2005-67, 2005-2 C.B. 729, and Rev. Proc. 2006-41, 2006-2 C.B. 777, as applicable to the calendar year 2006.[10]  Naturally, petitioner is not entitled to any per diem

_____

[10]  The allowance for meals is, of course, subject to the 50-percent limitation of sec. 274(n).

allowance for the times that he was working in the metropolitan Washington, D.C. area, as he was not then "away from home".

Finally, regarding mileage, petitioner is entitled to an allowance based on $0.445 per mile driven as stipulated by the parties, see Rev. Proc. 2005-78, sec. 5.01, 2005-2 C.B. 1177, 1179 except that petitioner is not entitled to any allowance for mileage between Washington, D.C., and Ocala, Florida, which mileage was personal in nature.

### Conclusion

We have considered all of the arguments advanced by the parties, and, to the extent that we have not expressly addressed any, we conclude that none supports an outcome contrary to that reached herein.

To give effect to our disposition of the disputed issue, as well as the parties' Stipulation Of Settled Issues,

<u>Decision will be entered under Rule 155</u>.