T.C. Summary Opinion 2019-14

UNITED STATES TAX COURT

SUNDERAM KRISHNAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16217-17S.                    Filed July 10, 2019.

Sunderam Krishnan, pro se.

Charles A. S. Wiseman, for respondent.

SUMMARY OPINION

PANUTHOS, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect at the time the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies and penalties in petitioner's Federal income tax for taxable years 2014 and 2015 (years in issue) as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2014 | $4,000 | $800 |
| 2015 | 1,957 | 391 |

The issues for decision are whether petitioner is: (1) entitled to deduct unreimbursed employee business expenses, (2) entitled to deductions for moving expenses, and (3) liable for accuracy-related penalties under section 6662(a).

### Background

Some of the facts have been stipulated, and we incorporate the stipulation and accompanying exhibits by this reference.

Petitioner lived in California when he timely filed the petition. During the years in issue petitioner was employed as a systems engineer.

---

[1](...continued)
Revenue Code (Code) in effect for the years in issue, all Rule references are to the Tax Court Rules of Practice and Procedure, and amounts are rounded to the nearest dollar.

I.    Education and Professional Background

Petitioner entered the United States in 2008 as an international exchange student. He completed his bachelor's degree in Milwaukee, Wisconsin, before commencing graduate studies in San Antonio, Texas, in 2010. Petitioner graduated with a master's degree in electrical engineering from the University of Texas, San Antonio, in 2012.

In March 2013 petitioner was hired by Cambay Consulting Services, LLC (Cambay), headquartered in Katy, Texas. A year later petitioner began work for Cambay's sister company SoftNice, Inc. (SoftNice), which is headquartered in Allentown, Pennsylvania.

Petitioner underwent corporate training in Houston, Texas, beginning in March 2013 for approximately three months before returning to San Antonio. Petitioner was offered his first contract project in September 2013. He worked on the following client contracts until the time of trial:

| Client | Dates | Location |
|---|---|---|
| Siemens Medical Solutions | Sept. 2013-May 2014 | Malvern, PA |
| OneGas | June 2014-Nov. 2014 | Tulsa, OK |
| SoftNice (in-house) | Jan. 2015-May 2015 | Remote assignment[1] |
| Esurance | May 2015-Aug. 2015 | San Francisco, CA |
| Kaiser Permanente | Aug. 2015- 2019 (trial date) | Pleasanton, CA |

[1]Petitioner worked remotely on an in-house project for SoftNice from January 2015 to May 2015. Petitioner's estimated time spent in San Antonio was approximately two weeks during the five-month project. Petitioner spent much of his remote work time traveling the country visiting friends and family in Kansas City, Missouri, and Miami and Fort Lauderdale, Florida. Petitioner also worked at the in-house project site in New Jersey for approximately three months.

Cambay and SoftNice are consulting companies that contract to provide technical staff to their clients on a project-by-project basis. In accordance with corporate policy, neither company reimbursed petitioner for relocation, rent, meals, telephone, internet, equipment, traveling, or commuting costs while he was working on contract projects for its clients.

## II. Petitioner's Living Situation

From 2010 to 2012 petitioner lived in a room in his uncle's four-bedroom house in San Antonio while pursuing a master's degree. Petitioner's uncle and aunt and their two children also lived in the house. Petitioner did not formally lease the room from his uncle, nor did he pay him rent on a regular schedule. In

lieu of formal rent payments petitioner purchased gifts for the children living in the house or sporadically insisted on giving his uncle lump sums in cash.

After graduation petitioner applied for work and continued to live at his uncle's house. Petitioner estimated his contributions to the household in San Antonio. While petitioner offered vague testimony, no documentary evidence of estimated household contributions was included in the record.

Petitioner continued to store his belongings at his uncle's house in San Antonio during the years in issue, but he rarely visited or stayed at the house. In 2014 petitioner visited San Antonio for Christmas and New Year's; he also visited for other special occasions during the years in issue. Petitioner generally lived and paid rent where he was stationed for work. From September 2013 until May 2014 he rented a shared apartment for $700 per month in Malvern, Pennsylvania. From June through November 2014 petitioner paid rent of $522 per month while living and working in Tulsa, Oklahoma. Although he listed the San Antonio residence as his address while working remotely for SoftNice from January through May 2015, petitioner visited the residence twice for an estimated total of two weeks' time. The remainder of the assignment was spent visiting friends and relatives in Kansas City, Missouri, and Miami and Fort Lauderdale, Florida, in addition to three months spent working at the in-house project site in New Jersey. Petitioner rented

an apartment in California beginning in May 2015 and has resided and paid rent in California since that time. Petitioner paid rent ranging from $825 to $900 while living in California during tax year 2015.

## III. Petitioner's Income Tax Returns

Petitioner timely filed his Federal income tax returns for 2014 and 2015. He hired a tax return preparer for both tax years, reporting the following income and "above the line" deductions for moving expenses on Form 1040NR, U.S. Nonresident Alien Income Tax Return, for taxable year 2014 and on Form 1040, U.S. Individual Tax Return, for taxable year 2015:

| Income | 2014 | 2015 |
|---|---|---|
| Total income | $63,357 | $44,235 |
| Moving expenses | (1,500) | (1,000) |
| Adjusted gross income | 61,857 | 43,235 |

Petitioner's tax returns for the years in issue included Schedules A, Itemized Deductions, on which he claimed various deductions including, as relevant here, the following unreimbursed employee expenses as reported on Forms 2106, Employee Business Expenses:

| Expenses | 2014 | 2015 |
|---|---|---|
| Parking fees, tolls, and transportation | $840 | $880 |
| Travel expenses | 7,140 | 3,000 |
| Business expenses:[1] | | |
| Cell phone service | 600 | --- |
| Internet service | 540 | --- |
| Section 179 | 1,400 | --- |
| Total business expenses | 2,540 | 3,410 |
| Meals and entertainment (after 50% limitation) | 5,070 | 5,290 |
| Total unreimbursed employee expenses | 15,590 | 12,580 |

[1]As shown on statement 1 to his Form 2106 for tax year 2014, petitioner's "business expenses" consisted of cell phone expenses, internet expenses, and a "section 179" expense.  Petitioner did not provide further details of his business expenses on his 2015 tax return.

IV.  Notice of Deficiency

On May 23, 2017, respondent issued a notice of deficiency to petitioner for taxable years 2014 and 2015.  Respondent disallowed petitioner's unreimbursed employee business expense deductions in full for both years, determining that petitioner did not establish that they were ordinary and necessary to his business or that the expenses were paid or incurred during the years in issue.  Respondent also disallowed petitioner's reported moving expenses in full for both years because he did not substantiate that they were moving expenses or that they were paid during the years in issue.  Petitioner timely petitioned this Court for redetermination.

## Discussion

### I.    Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and a taxpayer bears the burden of proving that the determination is in error.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[2]  Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving that he is entitled to any deduction claimed.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is provided for by statute and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.  A taxpayer is required to maintain records sufficient to enable the Commissioner to determine his correct

---

[2]Pursuant to sec. 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances.  Petitioner has neither alleged that sec. 7491(a) applies nor established his compliance with its requirements.  Petitioner therefore bears the burden of proof.

tax liability.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Such records must substantiate both the amount and purpose of the claimed deductions.  Higbee v. Commissioner, 116 T.C. 438, 440 (2001).

II.    Unreimbursed Employee Expenses

Section 162(a) allows deductions for all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  Boyd v. Commissioner, 122 T.C. 305, 313 (2004).  Performing services as an employee constitutes a trade or business.  Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970).  In order to deduct employee business expenses, a taxpayer must not have received reimbursement and must not have had the right to obtain reimbursement from his employer.  See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533.

When a taxpayer establishes that he has paid a deductible trade or business expense but is unable to adequately substantiate the amount, the Court may estimate the amount and allow a deduction to that extent.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  To apply the Cohan rule, however, the Court must have a reasonable basis upon which to make an estimate. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Congress overrode the Cohan rule with section 274(d), which requires strict substantiation for certain categories of expenses; in the absence of evidence demonstrating the exact amounts of those expenses, deductions for them are to be disallowed entirely. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969). Expenses subject to section 274(d) include travel and meal expenses as well as expenses for listed property such as passenger automobiles. Secs. 274(d), 280F(d)(4). A taxpayer must substantiate by adequate records or by sufficient evidence corroborating his own statement the amount, time, place, and business purpose of these expenditures. Sec. 274(d); sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Substantiation by adequate records requires the taxpayer to maintain an account book, a diary, a log, a statement of expense, trip sheets, or a similar record prepared contemporaneously with the expenditure and documentary evidence (e.g., receipts or bills) of certain expenditures. Sec. 1.274-5(c)(2)(iii), Income Tax Regs.; sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Substantiation by other sufficient evidence requires the production of corroborative evidence in support of the taxpayer's statement specifically detailing the required elements. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Petitioner reported expenses totaling $15,590 and $12,580 for tax years 2014 and 2015, respectively, in connection with his employment as a systems engineer. According to respondent, petitioner has failed to establish that the expenses were paid or, if paid, that the expenses were business related.

A.   Parking Fees, Tolls, and Transportation

Petitioner deducted $840 for 2014 and $880 for 2015 for parking fees, tolls, and transportation. Petitioner did not provide any evidence that he owned a vehicle in either year and in fact provided evidence to the contrary showing that he rented a car to move from Pennsylvania to Oklahoma in June 2014. Furthermore, petitioner did not provide a contemporaneous mileage log, toll or parking fee receipts, or any other evidence to substantiate his claimed deductions. Accordingly, petitioner is not entitled to parking fee, toll, and transportation deductions for the years in issue.

B.   Travel, Meals, and Lodging "Away From Home"

Expenses incurred by an individual for travel, meals, and lodging are normally considered nondeductible personal, living, or family expenses. Sec. 262(a); sec. 1.262-1(b)(3), (5), Income Tax Regs. Section 162(a)(2) permits taxpayers to deduct all ordinary and necessary travel expenses, including meals and lodging, incurred while "away from home" in the pursuit of a trade or

business.  Commissioner v. Flowers, 326 U.S. 465, 470 (1946); sec. 1.162-2,
Income Tax Regs.  Such expenses must be incurred while away from home
overnight.  United States v. Correll, 389 U.S. 299 (1967).  The purpose of the
"away from home" deduction is "to mitigate the burden of the taxpayer who,
because of the exigencies of his trade or business, must maintain two places of
abode and thereby incur additional and duplicate living expenses."  Kroll v.
Commissioner, 49 T.C. 557, 562 (1968).

The Court has interpreted a taxpayer's "home" for purposes of section
162(a)(2) to be his principal place of business.  Mitchell v. Commissioner, 74 T.C.
578, 581 (1980).  If a taxpayer has no principal place of business, a permanent
place of residence may be considered a tax home.  Barone v. Commissioner, 85
T.C. 462, 465 (1985), aff'd without published opinion, 807 F.2d 177 (9th Cir.
1986).  A taxpayer has a home for this purpose only when he has incurred
substantial continuing living expenses at the permanent place of residence.  James
v. United States, 308 F.2d 204, 207-208 (9th Cir. 1962); Barone v. Commissioner,
85 T.C. at 465-466.  If a taxpayer fits into neither of the above categories, then he
is considered to be an itinerant with a "tax home" wherever he happens to work.
Deamer v. Commissioner, 752 F.2d 337, 339 (8th Cir. 1985), aff'g T.C. Memo.
1984-63; Hicks v. Commissioner, 47 T.C. 71, 73 (1966); Rev. Rul. 73-529, 1973-2

C.B. 37; see also Hantzis v. Commissioner, 638 F.2d 248, 253 (1st Cir. 1981) ("[W]here a taxpayer is constantly on the move due to his work, he is never 'away' from home."), rev'g T.C. Memo. 1979-299.

Following the extensive caselaw on this point, we will deny traveling expense deductions where a taxpayer is itinerant. Rosenspan v. United States, 438 F.2d 905 (2d Cir. 1971); James, 308 F.2d at 207; Wirth v. Commissioner, 61 T.C. 855 (1974); Chimento v. Commissioner, 52 T.C. 1067 (1969), aff'd per curiam, 438 F.2d 643 (3d Cir. 1971); Hicks v. Commissioner, 47 T.C. 71. Courts have examined the following objective factors set forth in Rev. Rul. 73-529, supra, to determine whether a taxpayer has a tax home: (1) whether there exists a business connection to the location of the alleged tax home, (2) whether the taxpayer incurs duplicate living expenses while traveling and maintaining the alleged tax home, and (3) whether personal connections exist to the alleged tax home. See Henderson v. Commissioner, 143 F.3d 497, 500 (9th Cir. 1998), aff'g T.C. Memo. 1995-559; Minick v. Commissioner, T.C. Memo. 2010-12.

Petitioner contends that because of the transitory and temporary nature of his contract work during the years in issue, his uncle's house in San Antonio was his tax home. Therefore he asserts that his expenses while working in various locales should be considered incurred "away from home". Respondent contends

that petitioner had no tax home during the years in issue and should be considered an itinerant.

We first consider whether there was any business connection to San Antonio. See Rev. Rul. 73-529, supra. Petitioner was not required to live in San Antonio by his employer after he gained employment in March 2013. Although petitioner identified his location as San Antonio from January 2015 through May 2015 while working on an in-house project for SoftNice, he spent only a total of two weeks in San Antonio. For the remainder of the project he chose to work from various locations around the country. We find that petitioner had no real business connection to San Antonio.

Second, we consider whether petitioner incurred duplicate living expenses. See id. Petitioner has not provided any evidence other than his own testimony that he paid rent, utilities, or any other household expenses at the house in San Antonio during the tax years in issue. A letter in the record from petitioner's uncle merely confirms that petitioner was an "occupant" at his home starting in August 2011, not a renter. Although we accept petitioner's testimony that he made some gifts to his uncle's family, he has not proven that he incurred a duplication of living expenses while working at his contract sites.

Third, we consider whether petitioner provided sufficient evidence that he maintained personal connections to San Antonio. See id. Petitioner made infrequent visits to the San Antonio house after gaining employment, despite the fact that his uncle's family continued to live there. Although he stored certain personal belongings at the house, he did not reside in the house during 2014 and 2015. We find that petitioner did not maintain sufficient personal connections to San Antonio for the purposes of section 162(a)(2).

Considering these facts, we find petitioner does not meet the threshold requirements for his uncle's house to be deemed his permanent residence. Petitioner did not have any other permanent residence during 2014 and through April 2015. For that period, petitioner was an itinerant and was not "away from home" within the intent and meaning of section 162(a)(2). See Barone v. Commissioner, 85 T.C. at 465; Wirth v. Commissioner, 61 T.C. at 859. While petitioner rented an apartment in California beginning in May 2015, it is not at all clear whether he intended to make California his permanent place of residence from that time forward. At trial petitioner testified that he did not decide that he would reside in California permanently until some point in 2016. Even if it was petitioner's intention to permanently reside in California from May to December 2015, he has not satisfied any of the criteria for "away from home" expenses with

respect to that period. Thus, if petitioner's tax home was in California, he had no business reason to travel to San Antonio; and there is little, if any, evidence of duplicate expenses paid. See Rev. Rul. 73-529, supra. Accordingly, petitioner is not entitled to a deduction under section 162 for travel, meals, and lodging expenses paid or incurred while away from home during the years in issue. See Commissioner v. Flowers, 326 U.S. 465.

C. Business Expenses

The remaining unreimbursed employee expense items for consideration are the deductions claimed and identified by petitioner as "business expenses", $2,540 for 2014 and $3,410 for 2015. Petitioner included a schedule detailing his business expenses with his 2014 return but did not include a similar schedule with his 2015 return. His testimony indicates that he reported similar business expenses for each year. We will use the categories he provided for 2014 as a guide to our analysis of his deductible expenses for each year. The categories are cell phone service and internet expenses. Petitioner also reported a $1,400 "section 179" expense related to his laptop computer ($1,200) and cell phone ($200) for tax year 2014.

Petitioner claimed unreimbursed employee business expense deductions of $600 ($50 per month) for cell phone service and $540 ($45 per month) for internet

service for 2014.  Neither cell phone service nor internet service expenses are subject to the strict substantiation requirements of section 274(d).[3]  Therefore, pursuant to the Cohan rule, the amount of deductible expenses can be estimated by this Court provided we have a reasonable basis for making an estimate of the amount of the expenses related to business use.  See Vanicek v. Commissioner, 85 T.C. at 742-743 (estimate must have reasonable evidentiary basis).  Evidence in the record regarding the nature of petitioner's employment and his bank records support petitioner's claimed cell phone service and internet service expense deductions.  Petitioner's bank statements provide evidence that his estimated business expense of $50 per month for cell phone service and $45 per month for internet service were only a fraction of his total charges from his service provider, AT&T.  His monthly bill payments ranged from $168 to $491 per month during the years in issue and were regularly between $200 and $300.  Petitioner was

_____

[3]For taxable years beginning after December 31, 2009, cell phones are no longer included in the definition of listed property under sec. 280F(d)(4), which was amended by the Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560.  As a result of this amendment, deductions for cell phone service expenses during the years in issue are not subject to the strict substantiation rules of sec. 274(d).  Internet service expenses have been characterized as utility expenses rather than as expenses related to the use of listed property.  See Barnes v. Commissioner, T.C. Memo. 2016-212, at *71-*72; Verma v. Commissioner, T.C. Memo. 2001-132, slip op. at 12.  So characterized, internet service expenses are also not governed by the strict substantiation rules of sec. 274(d).

required to have both cell phone and internet access for his employment as a systems engineer, and he has provided a reasonable basis to accept his estimated expenses. Accordingly, we hold that petitioner is entitled to an unreimbursed employee business expense deduction totaling $1,140 for each of tax years 2014 and 2015.

Section 167(a)(1) allows depreciation deductions "for the exhaustion, wear and tear" of property used in a taxpayer's trade or business which are generally determined under section 168(a) on the basis of the applicable depreciation method, convention, and recovery period. For some depreciable property, a taxpayer can accelerate depreciation by deducting its cost as an expense for the taxable year in which the property is placed in service. See sec. 179(a). To prove entitlement to a depreciation deduction, a taxpayer must also establish the property's depreciable basis by substantiating its cost, recovery period, and any previous allowable depreciation. See Cluck v. Commissioner, 105 T.C. 324, 337 (1995). To deduct depreciation on any "listed property", a taxpayer must meet the section 274(d) heightened substantiation requirements. See sec. 280F(d)(4); see also, e.g., WSK & Sons, Inc. v. Commissioner, T.C. Memo. 2015-204, at *12-*13 (outlining section 274(d) requirements for passenger automobiles).

There is nothing in the record that adequately identifies the assets for which petitioner claimed the "section 179" deduction for 2014. Petitioner has not properly substantiated the claimed "section 179" expense deduction nor provided a basis on which we might estimate the expenses that are not subject to the substantiation requirements of section 274(d). See Cohan v. Commissioner, 39 F.2d at 543-544. Consequently, we sustain respondent's determination disallowing the "section 179" expense deduction for tax year 2014.

III.    Moving Expenses

Section 217(a) allows as a deduction for "moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work." Section 217(b) generally defines the term "moving expenses" as the reasonable expenses of moving household goods and personal effects from the former residence to the new residence and related travel including lodging. Only one trip per taxpayer qualifies for a deduction. Sec. 1.217-2(b)(4), Income Tax Regs.

Petitioner moved between multiple locations during the tax years in issue. See supra pp. 4-6. He claimed $1,500 and $1,000 in moving expense deductions for tax years 2014 and 2015, respectively. Petitioner provided a single piece of

substantiating evidence to support his moving expense deductions related to his move from Pennsylvania to Oklahoma in June 2014. The evidence, a rental car confirmation from Budget car rental, confirms payment of $482 to rent a car with pickup in Newark, New Jersey, on June 19, 2014, and dropoff in Tulsa on June 21, 2014.[4] At trial petitioner testified that he split the cost of the car rental expense with a friend for an actual rental car payment of $241. The timing of this trip aligns with petitioner's June 2014 start date for his contract assignment with OneGas in Tulsa.

Section 217(c) imposes conditions that taxpayers must satisfy to be eligible to deduct moving expenses. The condition at issue in this case requires that, during the 12-month period immediately following a taxpayer's arrival in the general location of his new principal place of work, the taxpayer be employed full time in that general location for at least 39 weeks. Sec. 217(c)(2)(A). The condition of section 217(c)(2) shall not apply "if the taxpayer is unable to satisfy such condition by reason of * * * involuntary separation (other than for willful misconduct) from the service of, or transfer for the benefit of, an employer after

---

[4]It is unclear why petitioner rented a car in New Jersey rather than Pennsylvania for his move to Oklahoma. This may have been a result of petitioner's splitting car rental moving expenses with a friend. However, evidence in the record and petitioner's testimony both confirm the time line of the move.

obtaining full-time employment in which the taxpayer could reasonably have been expected to satisfy such condition." Sec. 217(d)(1)(B).

Petitioner has not met his burden of showing that he satisfies the conditions for allowance of a deduction for moving expenses under section 217(c). Petitioner fails to meet the condition of section 217(c)(2), as he ended his assignment with OneGas at some point in November 2014--at most 23 weeks after his arrival on June 21 of the same year.

Under section 217(d)(1)(B), the condition of section 217(c)(2) does not apply in certain circumstances where an employee is transferred after a move to a new principal place of employment. See Whatley v. Commissioner, T.C. Memo. 1984-444. Section 217(d) was added to the Code by the Tax Reform Act of 1969, Pub. L. No. 91-172, sec. 231(a), 83 Stat. at 578. Before the addition of subsection (d), there was no provision for waiving the 39-week requirement imposed by section 217(c)(2). Section 217(d)(1) was added to eliminate the hardship that arises when an employee "is prevented from satisfying the test by circumstances beyond his control, such as his death or an unexpected action of his employer." S. Rept. No. 91-552 (1969), 1969-3 C.B. 423, 493; see also H.R. Rept. No. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 249; J. Comm. on Internal Revenue

Taxation, Summary of H.R. 13270, Tax Reform Act of 1969, at 39 (J. Comm. Print Nov. 18, 1969).

The regulations clarify which circumstances are deemed an "unexpected action" of an employer that would be "beyond * * * [the taxpayer's] control". S. Rept. No. 91-552, 1969-3 C.B. at 493. Section 1.217-2(d)(1)(ii), Income Tax Regs., provides, in part, as follows: "Thus, for example, if the taxpayer at the time of transfer was not advised by his employer that he planned to transfer him within 6 months to another principal place of work, the taxpayer could, in the absence of other factors, reasonably have been expected to satisfy the minimum employment period condition at the time of the first transfer."

Petitioner was informed by SoftNice that his contract was for fewer than 39 weeks. See sec. 217(c) and (d); sec. 1.217-2(d)(1)(ii), Income Tax Regs. Petitioner "knew, going in, that it was just a six-month project." Consequently, we conclude that petitioner does not meet the condition of section 217(c)(2).

Petitioner has not provided substantiation for his remaining reported moving expenses for tax years 2014 and 2015. Accordingly, petitioner is not entitled to moving expense deductions for the tax years in issue.

IV.    Accuracy-related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty for each year in issue under section 6662(a) and (b)(1), asserting that petitioner's underpayments result from negligence or disregard of rules and regulations.  A taxpayer may be liable for a 20% accuracy-related penalty on the portion of an underpayment attributable to negligence or disregard of rules. Sec. 6662(a) and (b)(1).  Pursuant to section 7491(c), the Commissioner bears the burden of production and must produce sufficient evidence showing that the imposition of the penalty is appropriate in a particular case.[5]  Higbee v. Commissioner, 116 T.C. at 446.

---

[5]Respondent's burden of production for penalties imposed under sec. 6662 includes the burden of producing evidence establishing that the penalties were "personally approved (in writing) by the immediate supervisor of the individual making such determination" as required by sec. 6751(b)(1), unless a statutory exception applies.  See Chai v. Commissioner, 851 F.3d 190, 217-218, 221-222 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42; Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016).  Written approval of the initial penalty determination under sec. 6751(b)(1) must be obtained before the first formal communication of penalties giving a taxpayer a right to challenge them.  See Clay v. Commissioner, 152 T.C. __, __ (slip op. at 44) (Apr. 24, 2019).  The sec. 6662 accuracy-related penalties determined in the notice of deficiency were properly approved as required by sec. 6751(b), and respondent has proven sufficient facts to satisfy the burden of production as to that issue.

"Negligence" includes any failure to make a reasonable attempt to comply with the Code and any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348 (9th Cir. 1991). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Disregard of rules or regulations is "careless" if the taxpayer does not exercise reasonable diligence in determining the correctness of a return position that is contrary to a rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. Disregard is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe. Id. Disregard is "intentional" if the taxpayer knows of the rule or regulation that is disregarded. Id. Respondent asserts that petitioner's improper claims for deductions for moving expenses and unreimbursed employee expenses combined with his failure to maintain adequate records indicate petitioner's negligence and disregard for rules and regulations. Respondent has satisfied his burden to show that the penalties are appropriate.

Once the Commissioner meets his burden, a taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); Higbee v. Commissioner, 116 T.C. at 447. To the extent that a taxpayer shows there was reasonable cause for an underpayment and that he acted in good faith, section 6664(c)(1) prohibits the imposition of a penalty under section 6662(a). Sec. 1.6664-4(a), Income Tax Regs. The decision whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances, including: (1) the taxpayer's efforts to assess the proper tax liability, (2) the knowledge and experience of the taxpayer, and (3) reliance on the advice of a tax professional. Id. para. (b)(1). Generally, the most important factor is the extent of the taxpayer's efforts to assess his or her proper tax liability. Id.

Reliance on the advice of a tax professional or an honest misunderstanding of the law that is reasonable in the light of the facts and circumstances may support a conclusion that a taxpayer acted with reasonable cause and in good faith with respect to a reported position. Id.; see Higbee v. Commissioner, 116 T.C. at 448-449. Reliance on the advice of a professional must be reasonable under the circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.; see also Pasternak v. Commissioner, 990 F.2d 893, 903 (6th Cir. 1993), aff'g Donahue v.

Commissioner, T.C. Memo. 1991-181; Neonatology Assocs., P.A. v.

Commissioner, 115 T.C. 43, 97-99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

The advice must be based upon an analysis of all pertinent facts and the applicable

law and must not be based on unreasonable factual or legal assumptions.  Sec.

1.6664-4(c)(1)(i) and (ii), Income Tax Regs.  It cannot be based on an assumption

that the taxpayer knows, or has reason to know, is unlikely to be true.  Id.

subdiv. (ii).

Petitioner engaged a return preparer to prepare his Federal income tax

returns for the years in issue.  At trial petitioner testified that he answered a "few

questions" for his tax return preparer but did not explain what information he

provided or how the preparer arrived at the amounts of expenses petitioner

deducted on the returns.  On the basis of the record, we conclude that petitioner

knew he was not incurring duplicate expenses.  In addition the amounts claimed

on petitioner's tax returns far exceeded those justified by his testimony.  Petitioner

failed to establish reasonable cause for the positions he took on his returns and

good faith in taking those positions within the meaning of section 6664(c)(1).

Petitioner did not make a reasonable good-faith effort to correctly assess his tax

liability, particularly in regard to his claim of duplicate expenses "away from

home" when he was not paying regular or significant rent or utilities at his uncle's

San Antonio home. On the basis of our findings, we sustain respondent's determination to the extent of the underpayments decided for tax years 2014 and 2015.

In reaching our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.